IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA, TENNESSEE

**BOBBY LEE HOLLINS**
 **Plaintiff,**

**JURY DEMAND**

VS.

CASE NO. _____

**CITY OF CHATTANOOGA, TENNESSEE,**
and **PHILLIP GRUBBS,**
 **Defendants.**

## COMPLAINT

Plaintiff, Bobby Lee Hollins, by and through counsel, brings this action against Defendants City of Chattanooga and Phillip Grubbs, and for her Complaint would state as follows:

### JURISDICTION

1. Plaintiff, Bobby Lee Hollins, is a resident of the State of Massachusetts.

2. Defendant, City of Chattanooga (hereinafter "Defendant City"), is organized under the laws and Constitution of the State of Tennessee. It is a corporate entity capable of suing and being sued. Defendant City maintains and operates the Chattanooga Police Department. Defendant City is an entity for the purpose of jurisdiction and is a resident of the State of Tennessee in the Eastern District of Tennessee.

3. Defendant, Detective Phillip Grubb (hereinafter "Defendant Grubb"), a natural person and resident of Tennessee, is an officer employed by the City of Chattanooga through its agency, the Chattanooga Police Department.

4. This Court has jurisdiction over the action pursuant to 28 U.S.C. §§1331 and 1343(3) and that the controversy arises under the <u>United States Constitution</u> and under 42 U.S.C. § 1983 and 28 USC §§2201 and 2202. The Court has authority to award attorney's fees pursuant

to 42 USC §1988. Each and all of the acts alleged herein were done by the Defendants, or Defendant City's officers, agents, and other employees, under color of law and pursuant to the statutes, ordinances, regulations, customs, and usages of the City of Chattanooga and the State of Tennessee.

5. The factual allegations occurred in Chattanooga, Hamilton County, Tennessee and in the Eastern District of Tennessee. Venue is proper pursuant to 28 U.S.C. § 1391.

6. Defendant Grubb was, at the time of the facts which are the subject of the Complaint, a police officer employed by the City of Chattanooga through the Chattanooga Police Department. He was acting in the course and scope of his employment on April 1, 2021, when he signed a sworn Affidavit of Complaint against the Plaintiff, containing facts and assertions which he knew to be untrue, or which were proffered in reckless disregard of the truth. The Defendants did not have probable cause to arrest the Plaintiff.

7. Plaintiff Bobby Lee Hollins was damaged. She suffered economic and non-economic damages that were the direct and proximate result caused by the actions of the Defendants. The Defendants caused Plaintiff Bobby Lee Hollins' damages due to a constitutional deprivation of fundamental and recognized substantial rights, due to intentional actions of the Defendants, the deliberate indifference of the Defendants, or alternatively, due to a policy procedure or custom of the police department, failure to train officers, and failure to supervise officers.

**FACTS**

8. On February 2, 2021, Plaintiff was a 69-year-old resident of Massachusetts who had been in a more than four-year romantic relationship with man named Frank Kirbus (hereinafter "Decedent"), who was 69 years old and a resident of Hamilton County, Tennessee at the time of his death that day.

2

9. Plaintiff had travelled from Massachusetts, at Decedent's request, to Decedent's residence in Hamilton County on or about January 17, 2021.

10. Plaintiff traveled to Hamilton County solely to clean Decedent's house to make it hospitable, bring Decedent home from the hospital, care for him, and be with him in his final days.

11. Plaintiff traveled with her son, James Hollins, who had been a friend of Decedent for more than eight years, so that he could assist Plaintiff in caring for Decedent where she might be physically incapable of doing so.

12. On or about February 3, 2021, Plaintiff left Decedent's residence and returned home to Massachusetts.

13. Before Plaintiff left Decedent's residence, Decedent's son came by the house due Decedent's passing. Plaintiff also informed Decedent's best friend, his daughter, his nephew, and his next-door neighbor that Decedent had passed.

14. On February 19, 2021, a former girlfriend of Decedent who was named as Decedent's Executor, Ms. Stamatia Klaburner, called the Chattanooga Police Department (hereinafter "CPD") to report a burglary at Decedent's residence.

15. Upon information and belief, Ms. Klaburner alleged to the CPD that various crimes had been committed at the residence by Plaintiff, James Hollins, and an individual named Jonathan Tobin, to wit: burglary, theft over $60,000, and fraudulent use of credit cards.

16. On March 26, 2021, Detective P. Grubb #804 (hereinafter "Defendant Grubb") of the CPD filed a sworn Affidavit of Complaint against Mr. Tobin in the General Sessions Court of Hamilton County, alleging that he committed theft of over $60,000. **See Exhibit A**.

17. Defendant Grubb asserted in his Affidavit that Mr. Tobin fraudulently created a power of attorney over Decedent's affairs. **See id**.

18. Defendant Grubb also asserted that Mr. Tobin individually removed a collection of over 17 guns, over $80,000 rounds of ammunition, an oil painting, Decedent's phone, and various papers belonging to Decedent, and took them to Mr. Tobin's personal residence in Connecticut. **See id**.

19. Defendant Grubb did not assert that Mr. Tobin used the fraudulent power of attorney to commit any crimes or perform any other particular illegal actions. **See id**.

20. On April 1, 2021, nearly a week later, Defendant Grubb filed an Affidavit of Complaint against Plaintiff in the General Sessions Court of Hamilton County, alleging that she committed aggravated burglary, fraudulent use of a credit card, and theft over $60,000. **See Exhibit B**.

21. Defendant Grubb took no steps to independently confirm or refute those false assertions, and he ignored all the evidence he discovered indicating that Plaintiff was not culpable. **See id**.

22. Defendant Grubb clearly identified that Mr. Tobin removed items from the Property. He did not assert that Plaintiff removed any particular items from the Property. He did not have probable cause to believe that she received any items from Mr. Tobin, or that she was involved in a conspiracy with Mr. Tobin to steal the items. Regardless, Defendant Grubb still wrongfully charged Plaintiff with "Theft over $60,000" without identifying any items that Plaintiff may have taken unlawfully. **See id**.

23. The only specific allegations of theft Defendant Grubb asserted against Plaintiff was that she was a party to taking Decedent's cell phone, which he knew Mr. Tobin was in actual possession of, and that she "stole almost everything out of Mr. Kirbus' home". No further details were provided and there was no specific evidence to substantiate the assertions.

24. Defendant Grubb's assertion that Plaintiff "took" Decedent's cell phone is undermined because he had previously swore under oath that Tobin had taken the cell phone, but changed his initial sworn testimony in the Affidavit against Plaintiff without any evidence to support such a change. **See id** and **Exhibit A**.

25. Defendant Grubb's assertion that Plaintiff "stole almost everything out of Mr. Kirbus' home" is likewise unsupported by any evidence then possessed, any evidence ever discovered, and the explicit narrative included in his Affidavit of Complaint, because he explicitly asserted that Mr. Tobin took the items of value out of the home, and he was aware that James Hollins was the only one who rented and travelled anywhere in a U-Haul, while Plaintiff flew home to Massachusetts by herself. **See Exhibit B**.

26. Every time that Defendant Grubb asserted in his Affidavit of Complaint that Decedent's credit cards were being used fraudulently, Defendant Grubb either had no evidence whatsoever indicating who was using the credit card, or else he was aware that Plaintiff was not the one using the credit card, but that it was being used by James Hollins. Most often, James Hollins was not even in the same state as Plaintiff during the allegedly fraudulent uses. **See id**.

27. Despite this knowledge, Defendant Grubb repeatedly and falsely asserted that "Plaintiff" or "they" fraudulently used the card in order to manufacture the facsimile of probable cause against Plaintiff. **See id**.

28. Defendant Grubb also asserts that "James and [Plaintiff] used the AMEX…and are on video using the card at Ruby Falls and Walmart multiple times", despite knowing that Plaintiff <u>was</u> <u>never</u> seen using Decedent's AMEX card on video at any time, thus, <u>willfully committing perjury</u> in his sworn affidavit.

29. Defendant Grubb did not ever attempt to assert a factual or legal basis for his charge of "aggravated burglary" in his Affidavit of Complaint, or even address it in any way other than to state that he obtained a warrant for that charge. **See id**.

30. Defendant Grubb included no facts in his Affidavit of Complaint that indicated he had evidence Plaintiff entered Decedent's property without Decedent's effective consent, and all evidence Defendant Grubb did possess, including the fact that Plaintiff and Decedent were in a long-term relationship, that Plaintiff resided in the home with Decedent for multiple weeks before he passed away, and that she voluntarily left the home one day after his passing, indicated that her presence in the Property was with his effective consent. **See id**.

31. Defendant Grubb was aware that Plaintiff was in a romantic relationship with Decedent, yet he did not take any steps to determine if Plaintiff acted with at Decedent's direction or with his consent, or if he had given Plaintiff any *inter vivos* gifts.

32. The only living party who would definitely have been able to provide direct evidence about potential *inter vivos* gifts from Decedent to Plaintiff would have been the Plaintiff. Defendant Grubb never attempted to contact Plaintiff to allow her an opportunity to explain the facts before issuing a warrant for her arrest and extradition.

33. Because there were clear, rational, and probable lawful explanations for all of the activities taken by the Plaintiff that were described in Defendant Grubb's Affidavits of Complaint and based upon the totality of evidence that Defendant Grubb possessed at the time of its issuance, he did not have sufficient probable cause to issue a warrant for Plaintiff's arrest on the charges alleged.

34. Due to the issuance of the Affidavit of Complaint, a warrant was issued for Plaintiff's arrest, and she was arrested in Suffield CT and held on $1,000,000.00 bond.

35. Furthermore, due to the charges brought by CPD, Plaintiff's self-owned and operated daycare business was forced to be closed.

36. On February 22, 2022, the charges brought against Plaintiff were dismissed.

37. Due to the actions of Defendants, Plaintiff suffered damages.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1983

38. The Plaintiff re-alleges and sets forth all of the allegations contained in Paragraphs 1-37 as is fully set forth and alleged herein.

### B. *Monell* Liability for policy, custom or practice

39. Defendant City is liable to the Plaintiff for the actions of Defendant Grubb and other involved officers as a result of an official policy or custom of the City which was adopted by Chattanooga Police Department and which violated Plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution.

40. Defendant City adopted rules and regulations, or by custom, which allowed Defendant Grubb and others to falsely arrest the Plaintiff without probable cause and to harass Plaintiff, and that violated Plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution.

41. Defendant City adopted rules and regulations, or by custom, which allowed Defendant Grubb and others to arrest the Plaintiff and conceal their illegal conduct, as described in the facts, from supervisors, and which violated Plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution.

42. Defendant City adopted rules and regulations, or by custom, which allowed Defendant Grubb and others to make false reports, or to manufacture false statements by witnesses, or accept assertions known to be unsupported by evidence in reckless disregard of the

7

truth and which violated Plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution.

43. Defendant City's policy to issue an arrest warrant without a proper investigation was an intentional decision by Defendant City to deprive Plaintiff of her liberty and property without probable cause.

44. By not taking proper precautions to safeguard against unconstitutional errors, Defendant City's policies and procedures caused Plaintiff's injury of financial damages, economic loss, deprivation of liberty, and emotional distress, among other injuries.

45. Defendant City, through its officers, agents and employees of the CPD, is liable to the Plaintiff for proximately causing a constitutional deprivation of a well-established constitutional rights, namely violation of Plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution.

### C. *Monell* Liability for failure to supervise/train

46. Defendant City, through its officers, agents and employees of the CPD, is liable to the Plaintiff for failing to adequately supervise Defendant Grubb and other responsible officers. Specifically, Defendant City failed as follows:

    a. To supervise its detectives to require that they obtain sufficient probable cause prior to issuing an arrest warrant;

    b. To supervise its officers and intervene to prevent reliance on false statements, non-existent evidence, or the construction of a deceptive or misleading narrative in the prosecution of a case;

    c. To supervise its officers to prevent an application for an arrest warrant if that officer has not spoken with the only living witness to an interaction;

47. The deliberate indifference by Defendant City to the actions of its officers, including Defendant Grubb, and other responsible officers, that allowed these officers to manufacture false, insufficient, or fraudulent grounds for probable cause was a well-known danger to the constitutional rights of the Plaintiff which Defendant City knew. Yet, Defendant City turned a blind eye to the unethical and unprofessional conduct of these officers.

48. The deliberate indifference of Defendant City was the proximate cause of the injuries and damages to the Plaintiff.

## COUNT II
## FALSE IMPRISONMENT

49. The Plaintiff re-alleges and sets forth all of the allegations contained in Paragraphs 1-37 as is fully set forth and alleged herein.

50. Defendant City, through the actions of its officers, caused Plaintiff to be falsely imprisoned in Suffield, CT, and unlawfully violated her personal liberty on April 22, 2021. On that day, Defendant City caused Plaintiff to be intentionally and unlawfully restrained, confined, and detained through its issuance of an arrest warrant without sufficient probable cause. This Defendant unlawfully caused Plaintiff to be falsely arrested in the State of Connecticut and held on a One Million Dollar Bond. The arrest was without probable cause. The intentional conduct of Defendant City was the proximate cause of injury to Plaintiff.

## COUNT III
## MALICIOUS PROSECUTION

51. The Plaintiff re-alleges and sets forth all of the allegations contained in Paragraphs 1-37 as is fully set forth and alleged herein.

52. A prior judicial proceeding was brought against Plaintiff.

53. That proceeding was brought without probable cause.

54. The suit was brought based on the Sworn Affidavit of Complaint written and signed by Defendant Grubb and proffered by Defendant City of Chattanooga through the auspices of authority of the CPD, who did so with malice against Plaintiff.

55. The prior judicial proceeding was finally terminated in favor of Plaintiff.

56. The Plaintiff was damaged as a result of the prior judicial proceeding.

## PRAYERS FOR RELIEF

The Plaintiff prays as follows:

a. That process issue;

b. That a jury be impaneled to hear all issues triable before the Court;

c. That Plaintiff be awarded compensatory and actual damages against the Defendants in the amount to be established at trial, in an amount not less than One Million Dollars ($1,000,000.00);

d. That Plaintiff be awarded punitive damages against the Defendants in the amount established at trial, in an amount not less than Two Million Dollars ($2,000,000.00);

e. That the Court order reasonable attorney's fees pursuant to 42 U.S.C. §1983 and 1988, together with all costs and expenses in the prosecution of this action;

f. For any and all other general relief as is allowed by law.

RESPECTFULLY SUBMITTED,

MCKOON, WILLIAMS, ATCHLEY
& STUCLE, PLLC

By:     */s/ James R. McKoon*
**JAMES R. McKOON, BPR #009554**
*Attorneys for Plaintiff*
633 Chestnut Street, Suite 1500
Chattanooga, TN 37450
(423) 756-6400/fax: (423) 756-8600
Email: jmckoon@mwalawfirm.com